**In re Patrick C. GROSSO, Debtor.**

**Bankruptcy No. 11–83–01388 MA.**

United States Bankruptcy Court, D. New Mexico.

Oct. 25, 1984.

Stephen C.M. Long, Albuquerque, N.M., for debtor.

David A. Grammer, III, Albuquerque, N.M., for Albuquerque Publishing Co.

Kim E. Kaufman, Jan E. Mitchell, Asst. U.S. Atty. for I.R.S., Albuquerque, N.M., for Karler Packing.

John T. Tiwald, Albuquerque, N.M., for Conagra, Inc.

Martha L. Glaman, Albuquerque, N.M., for Sunwest.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court upon the motion of the debtor to avoid the judicial liens of Conagra, Inc., Albuquerque Publishing Company, Sunwest Bank and Karler Packing Co., Inc. (judgment creditors) pursuant to 11 U.S.C. § 522(f). On the date of filing of the debtor's bankruptcy petition, the debtor claimed a homestead exemption in residential property which was later sold, free and clear of liens with the liens attaching to the proceeds. After the sale, the Court ruled that the debtor was not entitled to a homestead exemption in the proceeds and the debtor then amended his scheduled exemptions to claim $7,900.00 of the proceeds of sale pursuant to 11 U.S.C. § 522(d)(5) and § 522(d)(1).

Two mortgages against the property were paid off upon sale of the property, leaving a fund of $18,700.00 against which the following liens attached:

1. Conagra, Inc., judgment lien filed 9–22–82, approximate amount $15,000.00;
2. Albuquerque Publishing Company judgment lien filed 12–20–82, approximate amount $5,000.00;
3. Sunwest Bank judgment lien filed 3–22–83, approximate amount $1,200.00;
4. Karler Packing Company judgment lien filed 4–25–83, approximate amount $1,800.00; and,
5. Wheeler, McElwee & Martone mortgage lien filed 6–10–83. This mortgage secured an unliquidated promissory note for legal services rendered or to be rendered. On the date of filing, the debtor allegedly owed approximately $4,200.00 to his attorneys. By the date of the hearing, the debtor was said to be indebted to his attorneys in the amount of $7,900.00.

Upon agreement of the parties that no more than $7,900.00 of Conagra's lien could be avoided as impairing the debtor's exemptions, $10,800.00 has been paid to Conagra. The disposition of the remaining $7,900.00 is at issue. The debtor is allowed that amount pursuant to 11 U.S.C. § 522(d)(5); however the judgment creditors urge that the debtor's granting of a consensual lien after the filing of the judgment liens waived the debtor's right to any exemption because it created a "circuity of lien"; that is, the judgment lien has priority over the consensual lien, the consensual lien has priority over the exemptions, and the exemptions can defeat the judgment lien. The judgment creditors further urge that since the debtor had incurred attorney fees equalling the amount of the allowed exemption by the date of the hearing on this matter, there was no longer an exemption to be impaired, since the avoiding of the judicial liens would create no equity for the debtor. The debtor argues that he is entitled to an exemption in the amount of $7,900.00 and his choice to use that value to secure a note for attorney fees should not result in loss of the exemption.

The effect of a consensual lien on the debtor's right to avoid judgment liens senior to the consensual lien has not been previously addressed by this Court. Although cases from other jurisdictions which address the issue provide some guidance, they all deal with distinguishable fact situations. *Losieniecki v. Thrift Consumer Discount Company (In re Losieniecki)*, 17 B.R. 136 (Bankr.W.D.Pa.1981) states the problem somewhat differently, but the nature of the issue is the same. In that case, the creditor argued that § 522(f) existed to aid debtors but not other creditors and that it would not, therefore, allow the avoidance of a lien when to do so would improve the

position of subsequent lienholder. This position is supported by § 551 of the Code which preserves an avoided lien or transfer for the benefit of the estate, preventing a subsequent lienholder from improving his position. The court in *Losieniecki* concluded that where an exemption is claimed in the encumbered property, § 551 operates with § 522(f) to allow the lien to be avoided and retained by the estate senior to the unavoided junior lien, so that the lien can be exempted by the debtor. The effect of § 551 is, according to the *Losieniecki* court, to preserve the liens for the benefit either of the debtor's exemptions or for the estate, but *not* to prevent the operation of § 522. *Id.* at 140. The court does not address the indirect effect of its holding: is that the junior unavoided lien becomes senior to any equity remaining in the debtor's property after the exemption rights of the debtor have been preserved.

At odds with *Losieniecki* is *Silver v. Savings Bank of Manchester (In re Fiore,)* 27 B.R. 48 (Bankr.D.Conn.1983). The *Silver* court did not discuss the plain language of § 522(f), but rather said that the elimination of a judicial lien through the granting of a voluntary lien was unjust (the judicial lien in *Silver* did not impair an exemption when it attached), and that an imputation of such intent to Congress should not be made. The *Silver* court suggested that other portions of the exemption statute operate to prevent unjust results, citing § 522(g), which does not allow the *debtor* to exempt property recovered as preferences or other avoidable transfers if the transfer was voluntarily made by the debtor. Apparently the Court believes that the granting of a voluntary lien removes from the Bankruptcy Code and the Bankruptcy Court the authority to reject state lien law, which authority the Code and court otherwise have. *Id.*

Neither *Losieniecki* or *Silver* address all the issues present in the instant case; they do offer approaches and present general questions about exemptions which must be considered. The issues in this case cannot be resolved without recognition of the technical interworkings of various sections of the Code, the policies behind those sections, and the equitable considerations which apply when there are conflicts between the Code provisions and the underlying policies.

■ First, the exemption section of the Bankruptcy Code, 11 U.S.C. § 522, creates and recognizes different distinctions among claims different than those found elsewhere in the Code. The Code generally draws a line between secured and unsecured claims. Although the Code limits a secured claim to an "allowed" secured claim, 11 U.S.C. § 506 (i.e., an allowed secured claim may not exceed the value of the secured property except in special circumstances under Chapter 11), once a claim is determined to be secured, the creditor must receive the value of that allowed secured claim, even though the debtor is sometimes allowed to choose how this is to be accomplished—e.g., by lump sum payment, payments over time with interest, or return of the collateral. The protection afforded secured claims throughout the Code makes it clear that Congress intended, at least to a large extent, to preserve the sanctity which state law gives to secured transactions, notwithstanding the two preeminent policies recognized and given effect by the Bankruptcy Code: the fresh start of the debtor and equal treatment of creditors.

■ If there is one prevailing purpose of the Bankruptcy Code, it is to provide a fresh start for the debtor. 123 Cong.Rec. H 11690–92, H 11696–7 (daily ed. Oct. 27, 1977); 123 Cong.Rec. H 457–78 (daily ed. Feb. 1, 1978), S.Rep. No. 95–989, 95th Cong., 2nd Sess., 1978; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 1977, U.S.Code Cong. & Admin.News 1978, p. 5787. The discharge under Chapter 7, 11 U.S.C. § 727, the "super-discharge" under Chapter 13, 11 U.S.C. § 1324; and the debtor's right to exempt certain property and keep it beyond the reach of creditors, 11 U.S.C. § 522; all implement this policy. In addition to the fresh start, in most cases, is the intention that creditors of the same type or

class be given equal treatment. This policy is reflected by the provisions of 11 U.S.C. § 1322 and 11 U.S.C. § 1126 which require a plan to be fair and equitable and non-discriminatory among members of the same class, and by 11 U.S.C. §§ 547 and 550, which allow preferences to be recovered for the benefit of the estate. To the extent that the automatic stay prevents the winner of the proverbial race to the courthouse from taking priority over other creditors, § 362 also aids in assuring an equitable distribution of assets among creditors. However, when the fresh start and equal treatment policies conflict, the interest of providing the debtor with a fresh start rarely takes a back seat to concern for a creditor.

■ Except in cases where the debtor has committed fraud, thus preventing discharge (11 U.S.C. § 523 and 11 U.S.C. § 727), or where a voluntary preferential transfer by the debtor of property otherwise subject to exemption operates to prevent the exemption of that property when it is recovered (11 U.S.C. § 522(g)(1)(A)), the Code operates to allow a debtor to emerge free from debt and with enough property to begin again. It is the voluntary or non-voluntary nature of the granting of a security interest, rather than the existence of the security interest itself, which is recognized and given effect by § 522(f)(1) and which alters the general rule of preserving secured claims. For purposes of moving property into the bankruptcy estate so that the debtor may then exempt it, § 522 avoids judicial liens *imposed upon* the debtor, *Day v. Boteler (In re Boteler)* 6 B.C.D. 798, 5 B.R. 408 (Bankr. S.D.Ala.1980), and also operates as an implicit qualification of the fresh start policy: the debtor will not be allowed to recover what he has voluntarily given away, even where it is recoverable as a preference. The recovered preference will benefit the estate—the creditors—rather than the debtor, because the voluntary transfer invalidates the debtor's rights to the property. Section 522(f)(1) takes the line normally drawn between secured and unsecured and moves it to delineate what was trans-

ferred voluntarily by the debtor and what was not. Given this differentiation of claims and interests, it would not seem to matter *when* the voluntary liens were given. This conclusion is wholly supported by the statute itself, which states no such qualification. 11 U.S.C. § 522(f)(1). If it impairs an exemption, it may be avoided. There are no exceptions. This is the clear wording of the statute, supported by the fresh start policy behind the Bankruptcy Code as well as by the effects and interactions of other Code sections. Thus, it is the holding of this Court that the judicial liens of Conagra, Inc., Albuquerque Publishing Company, Sunwest Bank and Karler Packing Company may be avoided to the extent that they impair the debtor's exemption, and the debtor will be entitled to his exemption except to the extent that he has voluntarily impaired it.

■ The allowance of the debtor's exemption does not complete the inquiry. That determination sets out the debtor's rights vis-a-vis the creditors, but does not determine the creditor's rights among themselves. Clearly, § 522 does not give a creditor the right to avoid a lien. Liens are treated under the Bankruptcy Code as they are under non-bankruptcy law in determining their status vis-a-vis one another. 11 U.S.C. § 724(c). Blind application of § 522(f)(1) would alter the application of state law; we do not think that it was the intent of Congress to alter the order of payment among creditors claiming a lien interest, be it a judgment lien or a mortgage. *Silver v. Savings Bank of Manchester, supra.* Further, once the debtor's exemption has been allowed, there is no longer a statutory or policy reason to draw distinctions between the voluntary or involuntary nature of the lien interest. Wherever possible, the protection of the debtor's right to a fresh start under the Code, made operative by § 522(f)(1), and the fair and equal treatment of creditors should both be achieved. In most cases, both can be achieved. Accordingly, the Court finds that in a case where the debtor grants a consensual lien after judgment liens have

attached, § 522(f)(1) should be applied in the following manner:

First, the exemption to which the debtor is entitled, and which the debtor has properly claimed, shall be determined. The value of the property claimed exempt shall be determined and, based on that value, the Court shall determine if the judgment liens in fact impair an allowable exemption. If they do, the Court shall compare the amount of the allowed exemption to any consensual lien which is junior to any judgment lien impairing the exemption. (We are not concerned with any judgment liens which come *after* the consensual lien; they are clearly avoidable.) If the amount of the consensual lien is equal to or exceeds the allowed exemption, the debtor will be found to have fully impaired his exemption and will not be allowed to avoid judgment liens in order to reclaim it. If the amount of the consensual lien is less than the allowed exemption, the debtor will be granted the difference in those amounts as the allowed exemption. Thereafter, as to the non-exempt value of the property, the creditors' rights will be determined exactly as they would be under a non-bankruptcy foreclosure.

 The instant case serves as an example of the application of this rule, with one added issue not usually found in lien avoidance cases: the consensual lien secured an unliquidated note for attorney fees. The amount of attorney fees secured by the property will be the amount incurred as of the date of filing the petition. It is beyond argument that the point at which exemptions are determined—the "line of cleavage" at which the status of each party is fixed is the date of the filing of the petition. *White v. Stump,* 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924); *Lawson v. Liberty National Bank and Trust Co. (In re Paolin* ), 18 B.R. 384 (W.D.N.Y. 1982); *In re Myers,* 17 B.R. 339 (Bankr.D. S.D.1982); *In re Harlan,* 32 B.R. 91 (Bankr.W.D.Tx.1983); *In re Hall,* 8 C.B. C.2d 974, 31 B.R. 42 (E.D.Tenn.1983); *Tarrant v. Spenard Builders Supply (In re Tarrant)* 9 B.C.D. 413, 19 B.R. 360 (Bankr. D.Alaska 1982); *State of Idaho v. Hazen (In re Hazen),* 9 B.C.D. 48, 19 B.R. 545 (Bankr.D.Idaho 1982); *In re Andreotti,* 5 C.B.C.2d 1146, 16 B.R. 28 (Bankr.E.D.Cal. 1981); *Butz v. Blue (In re Blue),* 3 C.B. C.2d 4, 5 B.R. 723 (Bankr.S.D.Ohio 1981); *Conn. Student Loan Foundation v. Williams (In re Williams),* 4 C.B.C.2d 238, 9 B.R. 1004 (Bankr.E.D.Va.1981); *In re Thompson,* 4 B.R. 18 (Bankr.D.Me.1979). The property entered into the estate on that date, and any new debt incurred by the debtor thereafter is unsecured debt with which this Court is not concerned (although eventually those fees must be approved by the Court). Additionally, this Court has not yet approved pre-petition attorney fees. For purposes of this opinion we will use the sum of $4,200.00 claimed by the debtor's attorney, but the Court reserves the authority to hold a hearing on those fees and adjust all figures as necessary, prior to a distribution pursuant to this order.

Applying § 522 described above, we first look at the debtor's claimed exemption of $7,900.00. No party has questioned that, were the funds available, the debtor would be allowed that exemption. Since the property has been sold and the fund paid out except for the amount of the debtor's claimed exemption, the value of the property is also $7,900.00. The liens against the fund are as follows (in approximate amounts since allowed interest to date has not been determined):

1. Judgment lien of Conagra, Inc., $4,200.00

2. Judgment lien of Albuquerque Publishing Company, $5,000.00;

3. Judgment lien of Sunwest Bank, $1,200.00;

4. Judgment lien of Karler Packing Company, $1,800.00; and

5. Consensual lien of Wheeler, McElwee & Martone, $4,200.00 (which includes the $1,200 pre-petition fees not yet approved)

Assuming that the attorney fee lien is approved in the amount of $4,200.00, the debtor would be entitled an exemption of

$3,700.00 (the $7,900.00 exemption claimed under § 522(d)(5) less the $4,200.00 portion of that exemption assigned away by the debtor). Since the judgment liens against the fund more than extinguish the fund, the liens impair the debtors exemption to the extent of $3,700.00 and will be avoided to that extent. The debtor will be given his exemption and the remaining lienholders will be paid, in order of attachment, until the fund is exhausted.

Should this rule be applied in a case where real property is not liquidated, the operation would be as follows: The judgment liens would be avoided to the extent that they impair the exemption of $3,700.00. If the assumed numbers are correct, the Conagra lien would stay in place as not impairing that exemption; the liens of Albuquerque Publishing Company, Sunwest and Karler would be avoided *in toto*. Since the consensual lien cannot be avoided, further action would need to be taken to preserve the exemption of the debtor. Accordingly, the Court would issue an order, a copy of which would be recorded in the appropriate county clerk's office, setting forth the amount of the debtor's exemption and ordering that the debtor's interest takes priority over the consensual lien. In effect, the debtor would be given a substitute lien in the amount of his "unassigned" exemption. This would prevent the junior mortgage holder from taking more than he would in a state law foreclosure situation, would give all lienholders what they would receive in a foreclosure (the avoided lienholders being too far back to share in the fund resulting from liquidation), and would preserve for the debtor the exemption to which he was entitled at the date of filing.

It is the opinion of this Court that application of this rule reconciles the conflicting statutory provisions, policies and equities in a lien configuration of this kind. Here it will require debtor's attorney to file an application for approval of attorney fees incurred to the date of filing so that the Court may determine, what portion of his exemption the debtor assigned away. Debtor's attorney shall file such application within 15 days from the entry of the order in this case.

An appropriate order shall enter.