**In re Richard BALDWIN, Debtor.**

**Bankruptcy No. 85–00085 E.**

United States Bankruptcy Court,
W.D. Pennsylvania.

March 23, 1988.

---

William Pineo, Meadville, Pa., Chapter 7 Trustee.

James J. Stuczynski, Erie, Pa., for debtor.

Barbara Smith, Titusville, Pa., for Joseph F. Kulwicki.

Louis Stack, Meadville, Pa., for Mellon Bank.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

Where the proceeds of sale of the debtor's residential real property exceed the amount of all consensual mortgages thereon, but such proceeds do not exceed the total amount of all liens (consensual and nonconsensual) in an amount sufficient to satisfy the debtor's homestead exemption, may the debtor use § 522(f) to obtain his exemption by avoiding judicial liens that, but for a subsequent consensual and unavoidable mortgage, would not impair the debtor's exemption?

### Jurisdiction

This court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania dated October 16, 1984 entered pursuant to 28 U.S.C. § 157. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

### Facts

At the time this Chapter 7 was filed on March 8, 1985, the debtor owned a residence located in Crawford County, Pennsylvania (the "Property"), which was encumbered by various judgment liens and mortgages. On July 25, 1985, the court entered an order confirming the trustee's complaint for private sale of the Property, free and divested of all liens, for the sum of $44,000. The sale confirmation order further provided that the divested liens, to the extent that they were valid, were transferred to the proceeds of sale. Those liens are as follows:

| Creditor | Nature of lien | Date of entry or recordation | Amount [2] |
|---|---|---|---|
| Pennbank | mortgage | 10–03–72 | $11,787.49 Paid at closing |
| Mellon Bank | judgment | 8–01–79 | 4,660.73 |
| Smith–Gray | judgment | 2–18–81 | 1,771.79 |
| Kulwicki | judgment | 1–18–82 | 2,383.00 |
| Kulwicki | judgment | 10–04–82 | 4,352.50 |
| Pittsburgh National Bank | judgment | 11–29–82 | 3,730.53 |
| Mellon Bank | mortgage | 3–10–83 | 14,000.00 |
| Marine Midland | judgment | 3–17–83 | 8,989.56 |
| Kulwicki | judgment | 1–30–84 | 10,000.00 |

In his schedules, the debtor claimed a $7,500 homestead exemption in the Property. On December 9, 1985, the debtor filed a "Motion to compel partial distribution and payment of debtor's homestead exemption and avoid liens" ("Motion"). In the Motion, the debtor alleged that the respective judgment liens of Mellon Bank, Smith-Gray and Kulwicki impaired his homestead exemption, and therefore were avoidable under Bankruptcy Code § 522(f).

By court order dated December 30, 1985, after notice and hearing and without objection by any party, the debtor was allowed a prepayment of $5,000 on his $7,500 claimed exemption, "with the balance of $2,500 payable upon final distribution if required in accordance with law." At the final distribution hearing, Mellon Bank and Kulwicki objected to the subordination of their judgment liens to the debtor's exemption. Thereafter, Pittsburgh National Bank objected on the same grounds.

### Discussion

The parties do not dispute that, absent bankruptcy, the liens would be paid in the

---

1. This opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052, which is made applicable to this contested matter by Bankruptcy Rule 9014.

2. Approximated.

chronological order in which they appear of record, as set forth above. However, the debtor argues that application of § 522(f) leads to the following distribution:

Proceeds of sale: $44,000.00

| Date of entry or Recordation | | Amount claimed | Debtor's Proposed Distribution |
|---|---|---|---|
| | Sale costs | $ 4,271.83 | $ 4,271.83 |
| | Bankruptcy costs | 3,777.00 | 3,777.00 |
| 10-3-72 | Pennbank mortgage (paid at closing) | 11,787.49 | 11,787.49 |
| 3-10-83 | Mellon mortgage | 14,000.00 | 14,000.00 |
| | Debtor's exemption | 7,500.00 | 7,500.00 |
| 8-1-79 | Mellon judgment | 4,606.73 | 2,663.68 |
| 2-18-81 | Smith–Gray judgment | 1,302.79 | -0- |
| 1-18-82 | Kulwicki judgment | 2,383.00 | -0- |
| 10-4-82 | Kulwicki judgment | 4,352.00 | -0- |
| 11-29-82 | Pgh. N. Bk. judgment | 3,204.56 | -0- |
| | | | $44,000.00 |

The debtor essentially argues that § 522(f) permits a debtor who has suffered prepetition judicial liens, which by themselves would not have impaired potential exemption rights, to voluntarily place a subsequent and non-avoidable consensual mortgage on the property (which effectively does impair the homestead exemption) and then avoid those prior judicial liens in order to preserve his homestead exemption. We disagree.

We follow the reasoning of *In re Simonson*, 758 F.2d 103 (3rd Cir.1985), although the facts are slightly different. In *Simonson*, the court held that where the sale of real property produces proceeds that are not sufficient to satisfy all consensual liens, the debtor has no interest in the property to which his homestead exemption may attach, and therefore may not use § 522(f) to avoid two judicial liens that intervene between unavoidable first and second mortgages. In the instant case, unlike *Simonson*, the proceeds of sale *are* sufficient to satisfy the mortgages on the Property, with some proceeds left over for the judicial lienholders or, if appropriate, the debtor's exemption. The question here, then, is whether it is appropriate to pay the remaining sale proceeds to the respective lienholders in accordance with the priorities established by state lien law, or, instead, interpret and apply § 522(f) so as to distort the priorities established by state lien law, and pay the subordinate mortgage and the debtor's exemption ahead of judicial liens

which are prior to both. We would not hesitate to void the prior judgment liens if we could interpret § 522(f) to require that result.

The problem before us is one of circuity of priority. Each of the three types of claims (the mortgage, the judicial lien, and the exemption) is entitled to be paid ahead of one of the others. That is:

(1) the judgment lien, being prior in time, is entitled to payment prior to the mortgage lien;

(2) the mortgage lien, pursuant to § 522(f), is entitled to payment prior to the exemption claim; and

(3) the exemption claim, pursuant to § 522(f), is entitled to payment prior to the judgment lien.

We must decide where the circuity should be interrupted; where to cut the Gordian knot.

The issue is best resolved, and the circuity is cut, by the analysis used in *Matter of Fiore*, 27 B.R. 48 (Bankr.D.Conn.1983) and an analysis of the legislative history of § 522(f). In *Fiore*, the Chapter 7 trustee had $30,679.00 on hand after selling the debtor's residence and paying the first four mortgages. Under state (Connecticut) law, the next two liens in order of priority were:

(1) Judicial lien $ 2,697.59
(2) Mortgage 28,789.00
$31,486.59

The debtor claimed a $7,500 homestead exemption from the proceeds of sale. Since, if the judicial lien was not avoided, there would be no monies left after payment on the unavoidable mortgage to allow the debtor any portion of his $7,500 exemption, the debtor moved to avoid the judicial lien under § 522(f). *Id.* at 49.

The court rejected the debtor's argument, reasoning that:

At the time Cooper [the judicial lienholder] liened the debtor's property he was not impairing any potential exemption. To allow the debtor to place a voluntary lien on his property, and thereby eliminate Cooper's judicial lien through the use of § 522(f) is an unjust result and should not be imputed to be Congress' purpose and objective in enacting

§ 522(f). It is significant that Congress in § 522(g) prohibited a debtor from claiming an exemption in property which a trustee recovers from a transferee if the transfer by the debtor was voluntary. Like considerations should prevail under § 522(f) when a debtor voluntarily liens his property retaining insufficient equity for his homestead exemption except by seeking to avoid a judicial lien recorded prior to the voluntary lien.

*Id.* at 50 (footnote and citation omitted).

The reasoning in *Fiore* is consistent with the legislative history as shown by the House Report:

In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may avoid any judicial lien on exempt property ... [This] right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions.

H.R.Rep. No. 595, 95th Cong., 1st Sess., 126–27 (1977) *Reprinted in* 1978 *U.S.Code Cong. & Act. News,* 5787, 5963, 6087–88. It is clear that the judgment liens to be avoided under § 522(f) were intended to be those liens obtained by creditors who might beat the debtor in a race to the courthouse. Such judgment liens would be the last record entry or entries against the debtor before bankruptcy. The above report shows that Congress intended the lien avoidance provisions to operate only where the debtor would have had an exemptible interest in the property, but for the attachment of a judicial lien or liens. In other words, Congress presumed the last encumbrance on the debtor's property would be non-consensual and that in the absence of such non-consensual lien, the debtor would have had some equity in the property.

The possibility that a consensual mortgage lien might follow the affixing of a judgment lien apparently was not considered, nor was such a circumstance the type of situation to which § 522(f) was meant to apply. An analysis of the legislative history of § 522(f) supports this presumption.

The Commission on the Bankruptcy Laws of the United States was established in 1970 to study, analyze, evaluate and recommend changes in the bankruptcy laws. Upon the conclusion of its work, the Commission filed its report in two parts. Part I explains the Commission's history and its recommendations. Part II of the report consists of the Commission's draft of a proposed statute and explanatory notes. This draft was the basis for the bill that ultimately became law. Appendix 2, *Collier on Bankr.,* 15th Ed. (MB) *Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d. Cong., 1st Sess., Pts. I and II (1973),* I–1 (1987).

In § 4–503 of the Commission's proposed statute, only the debtor's equity was to be used in computing the debtor's exemption. *Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc. No. 137, 93d Cong., 1st Sess., Pt. I at 170 (1973). The explanatory notes to the Commission's proposed statute provide additional support for requiring the debtor to have a certain amount of "contemplated" equity to claim an exemption. *Report of the Commission on the Bankruptcy Laws of the United States,* H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. II at 128 (1973). The Commission proposed a subsection creating a federal homestead exemption. The explanatory notes to this subsection state that many debtors do not own a home, or have little or no equity in it. The Commission's proposal would have allowed a debtor to exempt other property in the same amount as the federal homestead exemption if the debtor had no homestead. Thus, the Commission implicitly recognized that a debtor might not have an equity value reserved after the last consensual lien was taken into account.

§ 4–503(f) provided the basis for the current § 522(f). The Commission's draft proposed that any lien obtainable by legal or equitable proceedings would be unenforcea-

ble against the property allowed to the debtor pursuant to § 4–503(b).[3]

Without examining further, one could conclude that a debtor is entitled to avoid any judicial lien regardless of its priority status established by state law.

However, in discussing § 522(f), the House noted that "[t]he debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien ..." H.R.Rep. No. 595, 95th Cong., 1st Sess., 362 (1977) *reprinted in* 1978 *U.S.Code Cong. & Ad. News,* 5787, 5963, 6318. As under the proposal submitted by the Commission, the debtor is still required to have equity in the property prior to claiming an exemption. The legislative history of § 522(b) elaborates on this principle:

> Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the value[4] of the property for the purposes of (claiming an) exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptible to the extent of $5,000.

H.R.Rep. No. 595, 95th Cong., 2d Sess., 360–61 (1977) *reprinted in* 1978 *U.S.Code Cong. & Ad.News* 5787, 5963, 6316. No-

where in the legislative history is there a suggestion that Congress contemplated the situation in the instant case where a mortgage lien followed a judgment lien.[5]

To the extent that the legislative history addresses this situation, we interpret the legislative history, consistent with *Simonson,* as requiring a debtor to have an equity interest reserved after the last consensual lien is taken into account.

Having concluded that there must have been equity in the property to which the judicial lien attached, we must then decide whether § 522(f) requires us to distort the priority established by state law, which is also the priority contemplated by all parties (debtor, mortgagee, and judgment creditor) at the time of the fixing of each lien upon the debtor's interest in the property.

Congress enacted § 522(f) to provide relief to the distressed and overburdened debtor. As was often the case, the debtor found himself financially embarrassed when a judicial lien attached to the debtor's remaining interest in excess of any consensual mortgage liens. Whatever equity the debtor contemplated in reserving was extinguished when the judicial lien attached. Congress enacted § 522(f) to provide relief to the distressed and overburdened debtor in this situation. This policy, however, is not furthered when the judicial lien and its

---

**3.** § 4–503(b) proposed to grant the debtor a $5,000 federal homestead exemption. Under this subsection, as explained in the preceding paragraph, the debtor could exempt only his equity interest. If the debtor did not have an equity interest, the debtor would be allowed to apply the unused portion of his exemption towards other property. If we applied this analysis to a foreseeable set of facts, an unintended result follows. For example, a debtor could have property with a fair market value of $10,-000, subject to a first mortgage of $5,000, a judgment lien of $2,000, and a second mortgage of $3,000 in that order of priority. To say the debtor could avoid the intervening judicial lien to create $2,000 of equity (when the debtor did not reserve any) in addition to exempting the $3,000 of other property would be contrary to the purpose expressed by the Commission. The Commission's intended result, rather, would be to allow the debtor to exempt $5,000 of *other* property.

**4.** Value is not defined in the Bankruptcy Code nor is it discussed further in the legislative history to the current version of § 522. However,

in the proposed draft submitted by the Commission, value was defined. In this context, the Commission defined value as the fair market value as of the date of the petition, less all indefeasible liens. H.R.Doc. No. 137, 93d Cong., 1st Sess., Pt. II at 126 (1973). As will be discussed, it is our opinion that a prior judicial lien superior to a second mortgage lien under state law becomes indefeasible upon granting the subsequent mortgage.

**5.** Congress' analysis, or the explanation in the legislative history, was less than complete because there is no indication that it considered the effect of § 547 in avoiding certain liens entered within 90 days before bankruptcy, nor on the interrelation between § 547 and § 522(d), nor is there any explanation why a debtor's waiver of exemptions is unenforceable under § 522(e), but the debtor's consensual mortgage (accomplishing the same result as to real estate) *is* enforceable.

priority status has been contemplated by the debtor and by subsequent mortgagees receiving voluntarily from the debtor a subordinate mortgage on the debtor's remaining interest (if any) in the property.

When a debtor enters into a mortgage transaction, both he and the mortgagee know, or ought to know, that the lien of the mortgage is subordinate to the liens of any prior judgments against the debtor. The subordinate lien position of the new mortgage must be presumed to have been contemplated by the parties.

We therefore interpret the legislative history to show an intent that where a debtor voluntarily subjects his property to the lien of an unavoidable subordinate mortgage, the debtor's act insulates the prior judgment liens from avoidance for exemption purposes. Our interpretation is also in accord with *Simonson.* As Judge Becker notes in his dissent: "Under the majority view, then, the debtor's subsequent encumbering of the property with the junior mortgage serves to insulate the judicial liens from the effect of section 522(f), because the total of the two (consensual) unavoidable encumbrances exceeds the value of the property." *Simonson,* 758 F.2d 103, 109 (3d. Cir.1985). We believe this holds true even when the unavoidable encumbrances do not exceed the value of the property.

That is another way of saying that when the debtor consents to the most subordinate mortgage on his property, he ratifies, by his consent, all of the prior judicial liens then in existence on that property. Thus, those judicial liens, if not consensual previously, should be and are deemed consensual when the debtor places upon the record by his own act, the subsequent subordinate mortgage.

In further considering whether to adopt the *Fiore* reasoning, and test it against varying factual backgrounds, it is helpful to consider three hypothetical situations:

Hypothetical 1: Assume a $10,000 property, subject to a $10,000 judgment lien followed by an $11,000 mortgage. Under *Simonson,* no lien avoidance is allowable; hence, the state court lien priority prevails. The judgment lien is unimpaired.

Hypothetical 2: Assume a $10,000 property, subject to a $10,000 judgment followed by a $6,000 mortgage. Under the rule announced in other cases, the $6,000 mortgage would be paid first, and the debtor could avoid the $10,000 judgment and take $4,000 to apply on his exemption. Should the $10,000 judgment holder (holding a first lien position) be worse off solely because the subordinate mortgage was $6,000 rather than $11,000? We think not. The distribution should be the same as under Hypothetical 1. That is, the prior judgment lien should be unavoidable, having been insulated or ratified by the subsequent consensual mortgage.

Hypothetical 3: Assume a $10,000 property, subject to an $11,000 judgment followed by a $6,000 mortgage. Note that the mortgage was valueless when taken. Should it be advanced to full payment with $4,000 going to the debtor on his exemption? Again, we think not. The distribution should be the same as in Hypothetical 1 and the judgment lien should be unavoidable.

We are aware of cases which have applied *Simonson* in a different manner, or have adopted a different approach, and have reached contrary conclusions. However, we have been unable to find therein a consistent rationale for handling the instant problem and others like it.[6]

---

**6.** *See In re Audey,* 66 B.R. 52 (Bankr.W.D.Pa. 1986); *In re Green,* 64 B.R. 462 (Bankr.S.D.Ind. 1986); *Hooper v. Caputo (In re Hooper),* 60 B.R. 640 (Bankr.W.D.Pa.1986); *In re Braddon,* 57 B.R. 677 (Bankr.W.D.N.Y.1986); *Martz v. Pennsylvania Central Federal Credit Union (In re Martz),* 57 B.R. 345 (Bankr.W.D.Pa.1986). *See also In re Mancuso,* 45 B.R. 639 (M.D.Pa.1985); *Brown v. Beneficial Consumer Discount Co. (In re Brown),* 25 B.R. 319 (M.D.Pa.1983); *In re Duncan,* 43 B.R. 833 (Bankr.D.Alaska 1984); *Register v. Reese (In re Register),* 37 B.R. 708 (N.D.Ga.1983); *Orsburn v. Diners Club, Inc. (In re Orsburn),* 35 B.R. 217 (Bankr.N.D.Ga.1983); *Durham v. Montgomery (In re Durham),* 33 B.R. 23 (Bankr.D.Tenn.1983); *In re Baerwald,* 27 B.R. 142 (Bankr.E.D.Pa.1983); *Tarrant v. Spenard Builders Supply, Inc. (In re Tarrant),* 19 B.R. 360 (Bankr.D.Alaska 1982) and *Day v. Boteler (In re Boteler),* 5 B.R. 408 (Bankr.S.D.Ala. 1980).

Application of the rule expressed in *Fiore* yields a uniform and equitable result and is completely consistent with the legislative intent. Accordingly, the debtor's Motion to avoid the judicial liens prior in time to the Mellon Bank mortgage will be dismissed by separate order, and the Final Distribution Order of this court dated March 30, 1987 will be reconfirmed ordering distribution of the sale proceeds to the judicial lienholders and mortgage holder in the order of priority established by Pennsylvania law.