**In re Beverly Ann MURRAY aka Beverly Murray, Debtor.**

**Bankruptcy No. SB 88–04927 MG.**

United States Bankruptcy Court, C.D. California.

Sept. 18, 1989.

Charles Thomas Eye, Ontario, Cal., for debtor.

Scott D. Myer, Anderson, Ablon, Maseda & Lewis, Los Angeles, Cal., for Montroy Supply Co.

Roger R. Meadows, Meadows & Blackwell, Pomona, Cal., for Chino Valley Bank.

Jon A. Paradis, Santa Ana, Cal., for William and Ruth Prout.

Law Office of Victor G. Tessier, Pomona, Cal., for William McVittie.

## MEMORANDUM OF DECISION

### FACTS

MITCHEL R. GOLDBERG, Bankruptcy Judge.

There is no substantial dispute about the facts in this case. William P. Murray and debtor Beverly Ann Murray ("Debtor") owned a parcel of property as husband and wife as joint tenants. William P. Murray died on March 20, 1988 and Beverly Ann Murray filed her petition in bankruptcy on June 28, 1988.

Pursuant to an order of the court entered October 13, 1988, the property was sold free and clear of all liens and interests, which liens and interests attached to the proceeds of the sale. The proceeds were in the sum of approximately $164,000. Liens were to attach to the same extent, priority and legal effect they had on the subject property.

Debtor filed motions to determine the order of priority of liens and, pursuant to 11 U.S.C. § 522(f)(1), to set aside all judgment liens that would impair her homestead exemption pursuant to a Declaration of Homestead recorded August 23, 1968. Debtor stipulated that her exemption would be limited to $30,000 although her amended B–4 Schedule, filed September 26, 1988, seeks to have a homestead exemption of $45,000.

Debtor obtained a preliminary title insurance policy dated July 18, 1988 to determine the recorded interests against the property. Based on that policy, the amount of claims and issues either resolved or to be resolved at the time of this hearing, were as follows:

1. A deed of trust dated May 24, 1965 in which California Federal Savings & Loan is the beneficiary. This obligation was fully satisfied by insurance proceeds paid at the husband's death.

2. A deed of trust dated July 13, 1973 with William J. McVittie as beneficiary. The validity of this trust deed, for which no payments had been made since 1973, was settled in open court without objection by junior creditors. The settlement provided, in substance, that McVittie would be fully satisfied on his claim upon payment of $80,000 of which $53,000 was to be kept and the remaining $27,000 was to be paid to debtor, Beverly Ann Murray, as a forgiveness of interest, but which sum shall be credited toward any homestead rights the debtor may have. This sum thus reduces the homestead claim to $3,000.

3. A deed of trust recorded May 1, 1978 with California Business Financial as beneficiary. This cloud on title was resolved by efforts of the debtor's attorney and as a result thereof, a reconveyance was issued removing the lien.

4. An abstract of judgment against William Murray *only* in favor of William and Ruth Prout ("Prout"), recorded May 19, 1982 in the sum of $13,000. The amount now due, including interest, is approximately $21,000. The validity of this lien is disputed by debtor under her homestead exemption and by the junior encumbrancer, Chino Valley Bank ("Chino"), which alleges that, under California law, the lien was terminated upon the death of William Murray.

5. Writs of Attachment recorded September 10, 1979 in the sum of $3,679.12 and on October 11, 1979 in the sum of $5,280.12 in favor of Montroy Supply Company against William Murray and Beverly Murray. An abstract of judgment was recorded by Montroy Supply Company on *August 5, 1982* in the sum of $4,611.35 against William Bill Murray and Beverly Murray. This sum is less than the amount set forth in the two writs of attachment

which totalled $8,959.24. I conclude that a judgment entered within three years after the recordation of writs of attachment relates back for priority purposes. See *California Code of Civil Procedures Section 697.020* and the cases, reported prior to 1982, which gave rise to the implementation of that section effective January 1, 1983. This lien was also disputed by debtor as affecting her homestead rights.

6. An abstract of judgment recorded November 21, 1980 against William Murray *only* in favor of C.C. Service Corporation. The validity of this lien is disputed by debtor and Chino.

7. A deed of trust recorded *June 8, 1982* in the sum of $75,000 in which Chino is the beneficiary. This document was signed by both William Murray and the debtor.

While there are other judicial liens junior in time to the consensual lien of Chino, those liens are irrelevant to this proceeding as the total proceeds from the sale of the property, after payment of a $500 escrow fee, was approximately $164,000. The foregoing amounts owed, whether disputed or undisputed, exceed the amount of funds available and therefore, under any interpretation of 11 U.S.C. § 522(f)(1), all other junior judicial liens impair the debtor's homestead exemption and may be avoided. However, the tax lien of the Internal Revenue Service recorded after the Chino deed of trust is not affected by debtor's homestead exemption pursuant to 11 U.S.C. § 522(c)(2)(B).

## ISSUES

1. Are the abstracts of judgment of Prout and C.C. Service Corporation, recorded only against William Murray, liens that run with the land or were those judgment liens against the property terminated upon the death of William Murray?

2. Does the consensual lien of debtor and her husband to Chino affect the rights of judgment lienholders recorded prior to that trust deed and what effect does the homestead right of debtor have on these judgment liens?

3. Is the claim of Charles Eye as counsel for the debtor for attorney fees under 11 U.S.C. § 506(c) to be paid from the proceeds of sale when there will be insufficient funds to pay all of the consensual liens?

## DISCUSSION

### A. *Death of William Murray:*

■ Chino has asserted that under California law the two abstracts of judgment by Prout and C.C. Service Corporation although prior to the Chino encumbrance, terminated with the death of the judgment debtor William Murray. Prout has challenged the right of Chino to assert this argument since the debtor did not interpose it. However, the debtor now joins in Chino's argument. I conclude that Chino is an interested party in determining the distribution of the proceeds from the sale of the property inasmuch as my prior order provided that all liens and interests would attach to the proceeds to the same extent and priority and *legal effect* as they had on the subject property.

*California Civil Code* Section 5104 states as follows:

A husband and wife may hold property as joint tenants, tenants in common, or as community property.

*California Civil Code* Section 5110 provides: ... when any of the property is acquired by husband and wife by an instrument in which they are described as husband and wife, *unless a different intention is expressed in the instrument,* the presumption is that the property is the community property of the husband and wife. (emphasis added)

There is no dispute, in this case, that title to the property was taken by William Murray and Beverly Murray, husband and wife, as joint tenants.

■ California law is clear. Upon the death of a joint tenant, judgment liens against only the deceased do not run with the land, but are terminated upon the death of the judgment debtor. *Tenhet v. Boswell*, 18 Cal.3d 150, 133 Cal.Rptr. 10, 554 P.2d 330 (1976); *Hamel v. Gootkin*, 202

Cal.App.2d 27, 20 Cal.Rptr. 372 (1962); *People v. Nogarr,* 164 Cal.App.2d 591, 330 P.2d 858 (1958); *Zeigler v. Bonnell,* 52 Cal.App.2d 217, 126 P.2d 118 (1942).

■ The Prouts argue that courts should look beyond the face of the document and determine whether or not the intent of the parties was to hold the property as community property and not as joint tenants. The Prouts cite *California Civil Code* § 4800.1(b) as authority that though the parties take title to property as husband and wife as joint tenants, the property can be deemed community property. *California Civil Code* § 4800.1(b) states:

> For the purpose of division of property *upon dissolution of marriage or legal separation,* property acquired by the parties during marriage in joint tenancy form including property held in ... joint tenancy ... is presumed to be community property. (emphasis added)

This section of law relates to marital dissolutions. It does not relate to divisment of property on the death of a joint tenant. By its terms, it does not void the right of a husband and wife to take title as joint tenants and to enjoy the benefits that title in that manner creates under *California Civil Code,* § 5104. I find that Section 4800.1(b) is inapplicable in this case as there was no dissolution between William and Beverly and, as such, pursuant to Section 5104 and 5110, the property, at the time of the death of William Murray, was held in joint tenancy. See also *Schwaber v. Reed,* 89 B.R. 100, 104 (Bkptcy C.D.1988). In *Tenhet v. Boswell, supra,* the California Supreme Court has clearly held that upon William Murray's death, all judgment liens which attached only to his interest terminated. Beverly Murray, as a surviving joint tenant, took all property held in joint tenancy, free and clear of those judgment liens. By failing to levy and execute on their abstracts of judgment during the life of William Murray, the Prouts and C.C. Service Corporation lost their interests in the subject property upon William Murray's death.

B. *Lien Avoidance Claim of Debtor, 11 U.S.C. § 522(f) and Order of Priority of Liens:*

■ Pursuant to stipulation of all parties, the court previously ordered the payment of the senior deed of trust to McVittie in the sum of $80,000, which leaves a balance in the account of approximately $84,000. With removal of the Prout and C.C. Service Corporation liens for the reasons set forth above, the following claims still exist:

(1) Debtor claims a residual homestead right of $3,000.

(2) Montroy Supply Company claims, on its judgment lien, the amount of $7,774.91, which included accrued interest from date of judgment to March 23, 1989, plus interest at $1.26 per day from March 23, 1989.

(3) Chino claims a sum substantially in excess of $75,000 on its consensual deed of trust.

(4) Attorney Charles Eye presents an administrative claim under 11 U.S.C. § 506(c) for $12,000 for services rendered to the debtor and the estate.

> Eleven U.S.C. § 522(f)(1) states:
> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (1) a judicial lien.

California is known as a priority lien state. *California Civil Code* § 2897 provides, in part:

> Other things being equal, different liens on the same property have priority according to their time of creation....

Thus, the first creditor to create a valid lien on property has priority over other creditors who later create liens on the same property. See, *e.g., California Debt Collection Practices* Section 12.1, page 776. Under California law, the involuntary judgment lien of Montroy Supply Company, in the sum of approximately $7,794 would not affect any homestead exemption of the debtor inasmuch as there is $84,000 avail-

able after payment of senior consensual liens ($84,000 minus $30,000 leaves $54,000 available to Montroy Supply Company). It is only after consideration of the voluntary lien of Chino placed on the property after the involuntary lien of Montroy Supply Company that the homestead exemption may be affected by the Montroy judicial lien.

The cases which have dealt with this circuity of priority problem have reach conflicting conclusions. One group of cases appears to hold that 11 U.S.C. § 522(f)(1) provides that the bankrupt's right to avoid the fixing of a judicial lien, which impairs an exemption to which the debtor would be entitled, is superior to the priority and time rule set forth under state law. Thus, in these cases, for policy reasons of providing the debtor with a "fresh start," the court looks to the entire cash proceeds or appraised value of the property and from that sum first deducts all unavoidable liens (consensual liens, regardless of time of creation) then deducts the debtor's allowable homestead exemption, and then permits those judicial liens to survive against the excess in the order of their priority. Any portion of a judicial lien that exceeds the value of the property is thus avoided as that sum would affect the homestead exemption. *In re Magosin,* 75 B.R. 545, 547 (Bkptcy.E.D.Pa.1987); *see also In re Simonson,* 758 F.2d 103 (3d Cir.1985) which implies that if there was equity after accounting for all consensual liens, the homestead exemption is to be used to avoid judicial liens.

In *In re West,* 68 B.R. 647, 650 (Bkptcy. C.D.Cal.1986) the court stated:

I would first determine if there is actual impairment of the homestead exemption by subtracting the aggregate amount of all liens on the Property ($191,510) from the Property's value ($116,840). Because there is a negative equity ($74,770) in the Property, the West Lien does impair the homestead exemption. My approach does not distinguish between consensual liens having different priorities.... I believe Congress intended to give the debtor a fresh start to the extent a judicial lien impairs an exemption even if it

means reordering the priority of creditors.

Based on this finding, the judicial lienholder, whose lien was senior in time to a second deed of trust received either nothing or a net value of $600.

In discussing the issue of adjusting the priority of liens, another decision from this District, *In re Kruger,* 77 B.R. 785, 788 (Bkptcy.C.D.Cal.1987), states:

The Bankruptcy Code does not treat the debtor, his voluntary secured creditors and his involuntary secured creditors in exactly the same fashion. The debtor is granted a set of rights up to the amount of his exemption and these must be protected. The voluntary secured creditor is limited in his right to the value of the property. The smallest packet of rights is given to the judicial lien creditor who is limited both by the value of the property and by the exemption claimed by the debtor.... Therefore, this court prefers a formula which would deal first with the claimed exemption and then divide the claims into secured and unsecured portions.

While this gives a windfall to the junior voluntary lienholder (who presumably allowed his lien to attach to over encumbered property) it does not give the debtor a benefit to the detriment of creditors to whom he voluntarily gave liens.

See also Footnotes 7, 9 and 10 77 B.R. at 788, 789.

If one follows the theory of these cases, due to the exemption of debtor, the judicial lien of Montroy should be subordinated to the consensual lien of Chino, and the homestead exemption of the debtor. Thus, Montroy, under the theories of these cases, would receive nothing and, Chino, though junior in time to Montroy, would be paid in full contrary to the priorities of California law.

The cases which have reached a contrary result, have relied on the reasoning first set forth in *Matter of Fiore,* 27 B.R. 48 (Bkptcy.D.Conn.1983). In that case, the court stated as follows:

At the time Cooper levied the debtor's property, he was not impairing any potential exemption. To allow debtor to place a voluntary lien on his property and thereby eliminate Cooper's judicial lien through the use of 522(f) is an unjust result and should not be imparted to Congress' purpose and objective in enacting Section 522(f). *Id.* at 50.

*See* also *In re Durham,* 33 B.R. 23 (Bkptcy.D.Tenn.1983); *In re Grosso,* 51 B.R. 266 (Bkptcy.D.N.M.1984) and *In re Baldwin,* 84 B.R. 394 (Bkptcy.W.D.Pa. 1988), wherein the issue was clearly stated:

The problem before us is one of circuity of priority. Each of the three types of claims (the mortgage, the judicial lien, and the exemption) is entitled to be paid ahead of one of the others. That is:

(1) the judgment lien, being prior in time, is entitled to payment prior to the mortgage lien;

(2) the mortgage lien, pursuant to § 522(f), is entitled to payment prior to the exemption claim; and

(3) the exemption claim, pursuant to § 522(f), is entitled to payment prior to the judgment lien.

We must decide where the circuity should be interrupted; where to cut the Gordian knot. *Id.* at 396.

The *Baldwin* decision provides a detailed and persuasive analysis of the legislative history as shown by the House Report and concludes as follows:

Application of the rule expressed in *Fiore* yields a uniform and equitable result and is completely consistent with the legislative intent. *Id.* at 400.

In *In re Grosso, supra,* the court, after analyzing rights under § 522(f)(1) and discussing cases in which the debtor granted a consensual lien after judgment liens had been attached, stated:

First, the exemption to which debtor is entitled, and which the debtor has properly claimed, shall be determined. The value of the property claimed exempt shall be determined and, based on that value, the Court shall determine if the judgment liens in fact impair an allowable exemption. If they do, the Court shall compare the amount of the allowed exemption to any consensual lien which is junior to any judgment lien impairing the exemption.... If the amount of the consensual lien is equal to or exceeds the allowed exemption, the debtor will be found to have fully impaired his exemption and will not be allowed to avoid judgment liens in order to reclaim it. If the amount of the consensual lien is less than the allowed exemption, the debtor will be granted the difference in those amounts as the allowed exemption. *Id.* at 271.

I must respectfully disagree with the conclusion of my colleagues in *In re West, supra* and *In re Kruger, supra,* as I conclude that the interpretation of 11 U.S.C. § 522(f) expressed in *Fiore, Grosso* and *Baldwin, supra* is correct in cases involving judgment liens recorded senior in time to voluntary liens. I conclude that a judicial lien should only be avoided to the extent that it impairs the exemption allowed under § 522(f) without regard to junior consensual liens. If the debtor and a consensual lienholder wish to place a lien junior to judgment liens, they do so at their own risk. The debtor, by such consensual act, has chosen to impair its homestead exemption. This is obviously frequently done when individuals purchase homes and place a consensual lien upon the property so that the "equity cushion" is substantially less than the homestead exemption allowed by California law.[1] I hold that the

---

1. The following examples illustrate the impact of the rule set forth herein:

Example 1: Fair market value $100,000; consensual lien $80,000; judgment lien $15,000; consensual lien $10,000; homestead exemption $30,000. Equity at the time of judgment lien is $20,000 ($100,000 minus $80,000). Deduct the homestead exemption from the balance ($20,000 minus $30,000). Inasmuch as there is no

equity, the judicial lien does impair the exemption of debtor. Thus, pursuant to § 522(f), the judgment lien would be avoided due to the homestead exemption sought by the debtor. However the $20,000 available in homestead exemption would be affected by the junior consensual lien of $10,000. Therefore, $10,000 would go to the junior consensual lien, and the debtor would retain from the homestead exemp-

placement of a consensual lien after a recorded judicial lien has no bearing on whether the judicial lien impairs an exemption. State law rules of priority of recording must be honored or individuals would be encouraged, even on the eve of bankruptcy, to place a consensual lien on the property in a sum that will produce no equity after taking into account the homestead exemption. To hold otherwise would thus allow debtors and third parties to "wipe out," pursuant to 11 U.S.C. § 522(f), prior recorded judicial liens when they anticipated payment on the future sale or refinance of debtor's property. I therefore conclude that Montroy's judicial lien of $7,774.91 where the balance of funds available is $84,000, does not impair any portion of debtor's homestead exemption.

### C. Request for Attorney's Fees pursuant to 11 U.S.C. § 506(c):

Charles T. Eye ("Eye"), debtor's attorney asserts that he should be allowed attorney's fees from the proceeds of the sale of the house for services performed in resolving 13 liens of record by filing the various motions to sell the property and to determine the priority and validity of the various liens. Chino objects to payment of any fees from the proceeds on the grounds that his services did not benefit this secured creditor, should any of the funds paid impact on them.

11 U.S.C. § 506(c) provides:

(c) The trustee may recover from property securing an allowed secured claim the *reasonable, necessary costs* and expenses of preserving, disposing of such property, *to the extent of any benefit to the holder of such claim.* (emphasis added)

█ While payment of administrative fees from proceeds of secured collateral may be allowed, it is the burden of counsel in such cases to demonstrate that said fees are reasonable, were necessary costs to dispose of the secured property, and that said costs were incurred primarily for the benefit of secured creditors that will be impacted by payment of said fees. *In re Cascade Hydraulics and Utility Service, Inc.,* 815 F.2d 546 (9th Cir.1987); *In re Sonoma V,* 24 B.R. 600 (9th Cir. BAP 1982).

█ It is clear that "the extent to which mortgaged property should be charged ... rests within the sound discretion of the trial court." *Silver State Savings and Loan Assn. v. Young,* 252 F.2d 236, 238, 239 (9th Cir.1958); *In re Sonoma V, supra* at 604. In this case, the fees requested by Mr. Eye relate in part to general administration of the estate and in

---

tion the net sum of $10,000. The judgment lien would receive nothing.

Example 2: Fair market value $100,000; consensual lien $80,000; judgment lien $20,000; consensual lien $10,000; homestead exemption $7,500. The judgment lien would be impaired only to that extent ($100,000 minus $80,000 minus $7,500 = $12,500) and the judgment lien would therefore receive $12,500 ($20,000 minus $7,500). In this case the $7,500 due the debtor on its homestead exemption would be paid toward satisfaction of the junior lien of $10,000 and debtor would receive –0– cash.

Example 3: Fair market value $100,000; consensual lien $20,000; judgment lien $50,000; junior consensual lien $10,000; homestead exemption of $45,000. Senior liens prior to the judgment lien leave a net equity of $80,000 ($100,000 minus $20,000). Judgment lien of $50,000 would impair the exemption ($80,000 minus $45,000 = $35,000). Thus, debtor could avoid the judgment lien to the extent of $15,000 as impairing the homestead exemption. The judgment lien holder would therefore receive only $35,000. Of the $45,000 exemption, the junior consensual lien holder would receive $10,000 and the debtor would therefore receive, pursuant to its exemption rights, a net payment of $35,000.

Example 4: Fair market value $100,000; consensual lien $20,000, judgment lien $15,000; judgment lien $30,000; junior consensual lien $40,000; homestead exemption of $45,000. Senior lien would be paid their $20,000 leaving a balance of $80,000. The homestead exemption of $45,000 would not affect the senior judicial lien of $15,000 ($80,000 minus $45,000 = $35,000) and therefore the senior judicial lien would be paid in full as it does not impair the homestead exemption. The junior judgment lien would impair the homestead exemption ($80,000 minus $45,000 minus $15,000 = $20,000). Thus the junior judgment lien impair the homestead exemption to the extent of $10,000 and would therefore receive only $20,000. From the proceeds due the debtor on the homestead exemption, there would be paid to the junior consensual lien holder the sum of $40,000 leaving a net balance to the debtor of $5,000.

part, to the time expended to clarify the priority of all liens of record. The benefit to Chino in this case is quite clear. Through the efforts of Eye, Chino has been able to move into position junior only to that of Montroy. Had Eye chosen to do nothing, Chino would have acquired title at foreclosure sale (Chino had obtained an order for relief from the automatic stay) subject to at least six liens. The time and effort in state court to litigate a quiet title action on all of these liens would have been enormous. In addition, questions could have been raised by Prout and CC Services as to the standing of Chino to contest the validity of their judgment liens as only debtor, who acquired the joint tenancy interest, may have had standing to address the issue of termination on death of the judgment debtor. However, I am also mindful that part of the negotiating with McVittie was for the benefit of debtor even though that adjustment in payment was without harm to the other secured creditors. I conclude that the actions of Mr. Eye to effectuate a sale of the property free and clear of liens and to initiate litigation on the priority of said liens was a necessary cost and acted for the benefit of secured creditor, Chino. However, I find that the time expended by Mr. Eye in the general administration of the debtor's estate and time negotiating with lienholders junior in time to Chino was not for the benefit of the secured lienholder, but only for the benefit of debtor and should not be allowed an administrative fee under 11 U.S.C. § 506(c). The reasonable value of the time expended in this matter for which an administrative claim for fees and costs should be allowed to Mr. Eye, from the proceeds of the sale of the property, is the sum of $8,500.

## CONCLUSION

Based on the above analysis, I conclude that from the proceeds remaining in the estate of approximately $84,000 plus any accrued interest, sums shall be paid as follows:

1. To Charles Eye as an administrative expense, pursuant to 11 U.S.C. § 506(c), the sum of $8,500;

2. To Montroy Supply, on its judgment lien, which does not impair the homestead exemption of debtor, the sum of $7,774.91 plus interest at $1.26 per day from March 23, 1989 until paid;

3. To Chino Valley Bank, the consensual lienholder, the balance of all proceeds necessary to satisfy its junior consensual lien;

4. Should there be any funds left, the Internal Revenue Service shall be paid on its lien as its lien is not affected by the debtor's claim of exemption.

The senior judgment liens of Prout and C.C. Service Corporation are null and void as said liens, under California law, terminated upon the death of William Murray.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within Memorandum of Decision shall constitute my findings of fact and conclusions of law.