**In re Sandor CHABOT and Betty B. Chabot, Debtors.**

**CITY NATIONAL BANK, A NATIONAL BANKING ASSOCIATION, Plaintiff,**

v.

**Sandor CHABOT and Betty B. Chabot, Defendants.**

**Bankruptcy No. LA 87–16022 BR. Adv. No. LA 88–1953 BR.**

United States Bankruptcy Court, C.D. California.

Argued and Submitted March 13, 1989.

Decided May 3, 1989.

Diane F. Suchter, Office of the Gen. Counsel, Beverly Hills, Cal., for plaintiff.

Bruce Landau, Rosky, Landau & Fox, Beverly Hills, Cal., for defendants.

Davis H. Von Wittenburg, Los Angeles, Cal., U.S. Trustee.

## MEMORANDUM OF OPINION DENYING DEBTORS' SECTION 522(f)(1) MOTION

BARRY RUSSELL, Bankruptcy Judge.

Debtors' motion to avoid City National Bank's judicial lien pursuant to 11 U.S.C. Section 522(f)(1) is denied because the judicial lien does not impair the debtors' homestead exemption.

### FACTS

This proceeding involves a home that debtors Sandor and Betty B. Chabot own in Los Angeles, California. The home, as Mr. Chabot testified at trial, is "seven doors down from Beverly Hills." The home is subject to three senior deeds of trust and a junior judicial lien. In addition, the Chabots are entitled to a homestead exemption.

Two of the three senior consensual liens and the homestead exemption are not in dispute. Home Federal Savings & Loan Association currently holds the first deed of trust, which was recorded in 1977. Brentwood Square Savings & Loan Association holds the second trust deed, which was recorded on August 24, 1984. The homestead exemption is based on a Homestead Declaration the Chabots recorded on November 29, 1984. Cal.Civ.Proc.Code § 704.730 (Deering's Supp.1989) (allowing this couple a $45,000 exemption).

The judicial lien is held by City National Bank and results from a demand note for $165,277 that Sandor Chabot, as vice-president/secretary of Aristrocrat Products Corporation, executed on September 30, 1983, in favor of the Bank. The Chabots had previously executed a continuing guarantee to pay to the Bank any indebtedness of Aristrocrat Products. On September 23, 1984, the Bank instituted a state court action on the note. The Bank prevailed against the Chabots and recorded an abstract of judgment in the amount of $212,115.87 on April 18, 1986.

A third deed of trust was recorded on October 16, 1984, coincidently just a few weeks after the Bank brought suit on its note. It was recorded by Gayfry de Pan-

ama, a Panamanian corporation owned by cousins of the debtors. The third deed of trust was purported to have been executed on July 19, 1984, to secure payment of a $173,000 promissory note that was allegedly executed one year previously, on October 14, 1983. The note in turn was supposed to evidence the sum total of loans made by Gayfry de Panama between the years 1979 and 1983 to the Chabots. At trial, Sandor Chabot testified that the loans were actually made, but that they were made entirely in cash. Mr. Chabot suggested that if any documentation of these cash loans does exist, that it would be in Panama.

The Chabots filed a Chapter 7 petition on August 7, 1987. On that date, their home was worth $400,000,[1] and the debtors owed $86,412.42 on the first trust deed, $38,540.88 on the second trust deed, $173,000 on the third trust deed, and $241,579.08 on the Bank's judicial lien. The parties stipulated that the petition date would be the date used to value property for these purposes. 11 U.S.C. § 522(a)(2).

The Chabots listed the Bank as an unsecured creditor. The Bank did not object to the debtors' claimed homestead exemption and took no action during the pendency of the debtors' case regarding its judicial lien. The Chabots received a discharge and their case was closed January 7, 1988.

On September 22, 1988, the Bank filed a complaint in state court to set aside the third trust deed as a fraudulent transfer. On November 4, 1988, the debtors filed a motion to reopen their bankruptcy case and an application to remove the state court action. The Bank then filed a motion with this Court for abstention and to remand.

In a hearing on January 10, 1989, this Court granted debtors' motion to reopen their case and continued the Bank's motion to March 13, 1989. The debtors then filed a motion pursuant to Section 522(f)(1) to avoid the Bank's judicial lien.[2]

On March 13, this Court heard the Bank's continued motion to abstain and to remand. In a separate ruling, this Court filed its proposed order that the motion to abstain and to remand be granted. Because a decision to abstain and to remand is not reviewable, 28 U.S.C. § 1334(c)(2), the District Court will enter the final order on that issue. Bankr.Rs. 5011, 9027(e), 9033.

On March 13, this Court also heard the debtors' motion to avoid the Bank's judicial lien. It heard the motion in the form of a trial on declarations with the declarants available in court and subject to cross-examination. Debtors' motion was denied.

## JURISDICTION

A motion to avoid a lien is a core matter. 28 U.S.C. § 157(b)(2)(K). This Court has jurisdiction to hear a core matter and to enter a final order therein. 28 U.S.C. § 157(b)(1).

## ISSUE

Whether a judicial lien may be avoided pursuant to Section 522(f)(1) when the lien does not impair an exemption.

## DISCUSSION

The debtors' home was worth $400,000 on the date they filed their petition. The three consensual liens amounted to $297,-

---

1. The debtors, in their bankruptcy schedules and in their moving papers for this proceeding, declare that their home had a value of $325,000 on August 7, 1987, the date the petition was filed. However, the debtors, in previous financial statements submitted to the Bank, had valued their home at $350,000 in March 1980, at $450,000 in June 1981, at $475,000 in May 1982, and at $450,000 in May 1983. The Bank submitted an appraisal in evidence for this trial that the home had a value of $400,000 on the petition date. Based on the evidence before it, this Court determines that the property was worth $400,000.

2. Debtors correctly brought this action by motion. Bankr.R. 4003(d) (providing that a proceeding under Section 522(f)(1) be brought by motion in accordance with Bankruptcy Rule 9014). An action to void a lien under Section 522(f) is the exception to the general rule that an action to avoid a lien must be brought by complaint. Bankr.R. 7001 ("a proceeding . . . to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)," is an adversary proceeding and must be brought by complaint).

953.30 on that date, leaving $102,046.70 in equity unencumbered before the judicial lien is considered.[3] In addition, the debtors are entitled to a $45,000 homestead exemption. The three senior consensual liens and the $45,000 homestead exemption total $342,953.30, leaving $57,046.70 unencumbered and not exempted.[4] It is clear, assuming *arguendo* that the third trust deed is valid, that the three senior lienholders are fully secured. It is also clear that the next $45,000 of equity after the consensual liens is the debtors' exempt property.

On the date that the petition was filed, however, the Bank's judicial lien was for $241,579.08 and the home had only $57,046.70 in nonexempt equity left after the three senior liens and the homestead exemption. Thus, the Bank's claim was undersecured. What is in dispute is whether Section 522(f)(1) may be used to avoid the amount of the Bank's lien that was unsecured on the date that the petition was filed.[5]

If the debtors are successful in avoiding the portion of the Bank's lien that was unsecured on the petition date, then the debtors will be able to retain any subsequent appreciation in value of their home. If the Bank's lien is not avoided, then the increase in value of the home will belong to the Bank until its claim is satisfied in full.

In this case, the debtors received a discharge without having to sell their home and distribute the surplus equity to their creditors. Now, the debtors not only want to keep their home but they also want to avoid the portion of the Bank's lien that was unsecured on the petition date. There is a certain uncomfortable inequity to the debtors' position.

The obvious reason the debtors are attempting to avoid the judicial lien is to, in effect, validate for their own benefit, the highly suspicious third trust deed recorded by Gayfry de Panama. If the Bank's judicial lien were to be avoided in full, as the debtors request, then the Bank would lack standing to attack the validity of the third trust deed. The debtors' Section 522(f)(1) motion can be viewed as a way for the debtors to protect their own interests and their cousins' interests without anyone having to actually defend the third trust deed on its merits.

The plain language of Section 522(f)(1) cannot be read to allow the debtors to have their cake and eat it too. "If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Section 522(f)(1) provides that:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> (1) a judicial lien; ...

Section 522(f)(1) gives a debtor only a limited power to avoid liens. The power is limited to certain situations and is also limited to certain amounts. The debtor may avoid only a judicial lien and may

---

**3.** The third trust deed will be treated as valid for the purposes of these proceedings. This assumption is in no way based on the evidence before this Court and is made only because of this Court's decision to abstain from hearing the state court proceeding.

**4.** It is interesting to note that if the debtors' low valuation of $325,000 had been accepted, the three consensual liens and the homestead exemption would exceed the value of the home; thus allowing, under the debtors' theory, the entire judicial lien to be avoided.

**5.** Debtors' counsel stated at trial that they were not relying on Section 506(d) in their attempt to avoid the Bank's judicial lien. Thus, this Opinion is based solely on Section 522(f)(1) and does not address whether Section 506(d) would support debtors' position. For a well-reasoned opinion on the limitations of Section 506(d), *see Dewsnup v. Timm (In re Dewsnup)*, 87 B.R. 676 (Bankr.D.Utah 1988).

avoid one only "to the extent that such lien impairs an exemption." In *West v. West (In re West)*, 68 B.R. 647 (Bankr.C.D.Cal. 1986), the Court avoided a judicial lien only " 'to the extent that such lien impairs an exemption,' " thus "giving section 522(f)(1) its plain meaning." *Id.,* at 648.

A leading bankruptcy commentator also interprets Section 522(f)(1) by this same straight-forward reading of the Section's plain language and reaches the same conclusion:

> When the debtor avoids the fixing of a lien, pursuant to section 522(f), however, the lien is avoided only to the extent of the exemption, and the value of the lien that exceeds the amount that is exempted may still be enforced by the creditor.

3 *Collier on Bankruptcy* ¶ 522.29[1], at 522–86 (15th ed. 1988) (citing *Alu v. State of New York, Dep't of Taxation and Fin.,* 41 B.R. 955 (E.D.N.Y.1984) ).

In *In re Alu*, the District Court addressed "whether defendants' liens 'impair an exemption to which the debtor is entitled' within the meaning of 11 U.S.C. Section 522(f)." 41 B.R. at 957. The Court held that the judicial liens did not "impair an exemption to which the debtor was entitled" and, thus, could not be avoided under Section 522(f)(1). *Id.,* at 958.

> The [judicial] liens simply give defendants the right to enforce their money judgments against the residence to the extent of the excess of debtor's equity therein over $10,000, provided that debtor's equity therein is built up to exceed $10,000. N.Y.C.P.L.R. Section 5206. Regardless of whether these liens existed, the residence would be "exempt" pursuant to N.Y.C.P.L.R. [Section] 5206 (and hence "exempt" pursuant to 11 U.S.C. Section 522(b)(2)(A), and hence "exempt" within the meaning of 11 U.S.C. Section 522(f) ) only in the sense that a money judgment may not be enforced against the residence unless debtor's equity therein is built up to exceed $10,000, and is then enforceable only to the extent of such excess. Consequently, the existence of the liens does not "impair" any exemption which would otherwise exist.

Consequently, the liens cannot be avoided pursuant to 11 U.S.C. Section 522(f). *In re Alu,* 41 B.R. at 957–58.

■ Under the applicable California law on this homestead declaration, the Bank's judicial lien does not impair the debtors' exemption. In fact, the Bank has explicitly conceded that it does not dispute the debtors' claim to a $45,000 homestead exemption. City National Bank's Opposition To Motion To Avoid Lien, at 9. It should be noted that the debtors' exemption at issue in this case is only $45,000, and is not $45,000 and all subsequent appreciation in the property. Therefore, Section 522(f)(1) may not be used by the debtors to avoid the Bank's judicial lien because the judicial lien does not impair an exemption to which the debtors are entitled. *See also In re Hermansen,* 84 B.R. 729, 732 (Bankr.D. Colo.1988) ("§ 522(f)[1] avoids a judicial lien only to the extent it impairs an exemption, and no more").

The decision of the Bankruptcy Appellate Panel of the Ninth Circuit in *Baxter v. Kaiser (In re Baxter )*, 19 B.R. 674 (9th Cir. BAP 1982), is consistent with the result reached in this case because in that case the judicial liens at issue did impair an exemption. *Id.,* at 675. The language of Section 522(f)(1) provides that judicial liens that do impair an exemption may be avoided to the extent that they impair an exemption. The judicial liens at issue in *Baxter* had been recorded prior to the date that the debtors recorded a Declaration of Intent to Homestead. Under the applicable California law, the homestead exemption was subject to the senior judicial liens. In addition, the total amount of the judgment liens were less than the amount of the homestead exemption allowed to the Baxters. Thus, given those facts, the Bankruptcy Appellate Panel held that the judicial liens were avoided in their entirety.

Although the result in *Baxter* has been used to support avoiding an entire judicial lien in situations where only a portion of the judicial lien impaired an exemption, a more accurate reading of *Baxter*, and one more consistent with the statutory language of Section 522(f)(1), is that judicial

liens are avoided only to the extent that they impair an exemption.[6]

Debtors argue that the judicial lien must be avoided in full in order to allow the debtors a "fresh start." However, under the provisions of the Bankruptcy Code, the debtors make their fresh start in life only with the property they are permitted to exempt. If the debtors were allowed to discharge the claims of legitimate creditors and were also allowed to keep their prepetition property free of the liens of those creditors, then the debtors would be getting more than a fresh start. The debtors would be getting a "head start" under those circumstances. *Polk County Fed. Sav. & Loan Ass'n of Des Moines v. Weathers (In re Weathers)*, 15 B.R. 945, 951 (Bankr.D.Kan.1981) (liens survive a bankruptcy discharge unless the debtors properly voids them). The Code does not envision that the Chabots receive an inequitable "head start."

In addition, the debtors and their cousins also should not be allowed to obtain an inequitable advantage from the debtors' bankruptcy. In their briefs, the debtors put forward several arguments that, if accepted, would have prevented judicial review of the validity of their cousins' lien. For example, the debtors argued that the Bank's fraudulent conveyance action would be moot if this Court granted the debtors' motion and avoided the Bank's lien in full. Defendants' Trial Brief, at 22.

The debtors also argued that the Bank has no standing to institute a fraudulent conveyance action, regardless of whether this Court avoided its lien.[7] The debtors argued that only the Chapter 7 Trustee, if anyone, has standing to bring an action to recover a fraudulent conveyance. Possibly, the debtors view the commencement of a bankruptcy case as permanently staying all fraudulent conveyance actions, other than those brought by the trustee. If so, their belief is incorrect.

Whether the Chabots' Chapter 7 Trustee may reopen this case to pursue the Bank's fraudulent conveyance cause of action is not at issue because the Chapter 7 Trustee is not the party pursuing this action. *See Gross v. Petty (In re Petty)*, 93 B.R. 208, 212 (9th Cir. BAP 1988) (addressing that issue and allowing a case to be reopened). Whether the Bank is stayed from pursuing its fraudulent conveyance action is also not at issue because the Chabots have already received their discharge and their case was closed. 11 U.S.C. § 362(c) (ending the automatic stay); *cf. American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275–76 (5th Cir.1983) (creditor stayed during the case in order that trustee can pursue the creditor's cause of action on behalf of all creditors).

What is at issue, is whether the effect of the Chabots' bankruptcy was to destroy whatever standing the Bank might have

---

6. "Section 522(f), a statute in derogation of ordinary principles of private rights, especially property rights, must be subjected to strict scrutiny. *Bank of Columbia v. Okely*, 17 U.S. (4 Wheat.) 235, 241–42, 4 L.Ed. 559, 561 (1819); *United States v. De la Maza Arredondo*, 31 U.S. (6 Pet.) 691, 733, 8 L.Ed. 547, 563 (1832). It is thus appropriate to read the language of Section 522(f) narrowly, and to construe its tenor strictly." *In re W.K. Montgomery Constr. Co.*, 80 B.R. 385, 389 n. 5 (Bankr.W.D.Tex.1987).

7. Under both the Bankruptcy Act of 1898 ("Act") and the Bankruptcy Reform Act of 1978 ("Code"), a trustee in bankruptcy can bring an action to recover fraudulently conveyed property under bankruptcy's own fraudulent conveyance statute or under applicable non-bankruptcy law, *i.e.*, state fraudulent conveyance statutes. Bankruptcy's own fraudulent conveyance stat-

ute is contained in Code Section 548, which was derived from Act Section 67d. A trustee in bankruptcy can also pursue certain fraudulent conveyance actions under Code Section 544(b) during the pendency of a bankruptcy case. Section 544(b) gives the trustee standing to represent creditors of the estate and sue on their behalf. Section 544(b) was derived from Act Section 70e.

Debtors' argument was that prior cases held that the Bank lacked standing to bring an action under the predecessor to Section 548. The Bank, of course, could not and did not bring its state court action under Section 548. The Bank brought its state action under the applicable state fraudulent conveyance laws.

No provision of the bankruptcy laws now in effect served to destroy the Bank's standing to pursue its state law fraudulent conveyance action.

under applicable non-bankruptcy law to assert its fraudulent conveyance action. The state court will, of course, determine the actual standing of the Bank and the other merits of the remanded action. However, no provision of the bankruptcy laws, relevant to these facts, prevents the Bank from attempting to pursue its cause of action.

During the pendency of the Chabots' bankruptcy case, only the Chabots' Chapter 7 Trustee had standing under Section 544(b) to pursue certain state law claims, such as the fraudulent conveyance action that the Bank is now pursuing. A trustee's avoiding powers under Section 544(b) are subject to certain limitations. For example, the trustee is subject to a statute of limitations. 11 U.S.C. § 546(a). The Bank, not being the Chabots' Chapter 7 Trustee, is clearly not subject to Section 546(a). *Britton v. Fessler & Bowman, Inc. (In re Britton)*, 66 B.R. 572, 575 (Bankr.E.D. Mich.1986). Section 546(a) does not destroy the Bank's rights.

■ "Under Code § 544(b), the filing of a bankruptcy petition does not strip creditors of state-created rights to avoid transfers, it merely shifts that right to the creditors' representative." [8] 4 *Norton Bankruptcy Law & Practice* § 30.06, at 12 (1988). The mere fact that Section 544(b) gave the Chapter 7 Trustee standing in a representative capacity to assert the Bank's claim for a period of time did not act to destroy the Bank's rights. When a case is closed in which the trustee did not pursue a fraudulent conveyance cause of action pursuant to Section 544(b), such as happened in the Chabots' case, the right to pursue the state law cause of action reposes once again in whomever is able to assert it.

In *Unisys Corp. v. Dataware Products, Inc.*, 848 F.2d 311 (1st Cir.1988), the Chapter 7 Trustee abandoned certain fraudulent conveyance causes of action, which Unisys also had standing to assert. *Id.*, at 313. The First Circuit rejected the debtor's ar-

gument that the right to pursue a fraudulent conveyance cause of action "reverted to the debtor" and not to Unisys, when the Chapter 7 Trustee chose not to pursue that right. *Id.*, at 314. When the Chabots' Chapter 7 Trustee did not assert the Bank's cause of action, the right to pursue it clearly still reposed in the Bank and the Bank could assert its rights once the stay ended. 11 U.S.C. § 362(c) (stay ends upon the granting of a discharge to individual debtors in a Chapter 7).

## CONCLUSION

The debtors may not use Section 522(f)(1) to avoid the Bank's judicial lien when the lien does not impair an exemption to which the debtors are entitled. In addition, the mere fact that the debtors filed a Chapter 7 petition and their Chapter 7 Trustee failed to pursue the Bank's fraudulent conveyance action may not be used by the debtors to justify sheltering substantial equity from the Bank under a highly questionable deed of trust without permitting the validity of that lien to be challenged to the extent allowed under applicable non-bankruptcy law.

This Memorandum of Opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052.

A separate Order will be issued denying the debtor's motion to avoid the Bank's judicial lien.

IT IS SO ORDERED.

8. "A trustee acting under section 544 'acts as a representative of creditors.'" *American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir.1983) (quoting *Hassett v. McColley (In re O.P.M. Leasing Services, Inc.)*, 28 B.R. 740, 760 (Bankr.S.D.N.Y.1983) ).