In Re Sandor CHABOT and Betty B. Chabot, Debtors.

CITY NATIONAL BANK, a national banking association, Plaintiff-Appellee,

v.

Sandor CHABOT, Betty B. Chabot et al., etc., Defendants–Appellants.

No. CV 89–3662–AAH.
Bankruptcy No. LA 87–16022.
Adv. No. LA 88–1953–BR.

United States District Court, C.D. California.

Aug. 22, 1991.

Diane F. Suchter, Office of the Gen. Counsel, Beverly Hills, Cal., for plaintiff-appellee.

Bruce Landau, Rosky, Landau & Fox, Beverly Hills, Cal., for defendants-appellants.

Davis H. Von Wittenburg, Los Angeles, Cal., U.S. Trustee.

ORDER AFFIRMING BANKRUPTCY
DECISION AND ORDER DENYING
AVOIDANCE OF JUDICIAL LIEN

HAUK, Senior District Judge.

This matter comes before the Court on appeal from the decision of the United States Bankruptcy Court, Central District of California, which denied the Debtors,' Sandor Chabot and Betty Chabot ("Chabots"), Motion to Avoid Lien brought pursuant to Bankruptcy Code § 522(f)(1). *CNB v. Chabot, (In Re Chabot)* 100 B.R. 18 (Bktcy.C.D.Cal.1989). Having reviewed the record, together with all documents filed and arguments submitted, and based upon the reasons set forth below, and in the decision of the lower court which are hereby adopted, the Court finds and rules as follows:

## FACTS

The facts are as set forth in the Bankruptcy Court's Memorandum of Opinion and are incorporated herein. This proceeding involves real property in which the Chabots held a fee interest. The property is subject to three consensual deeds of trust, a homestead exemption claimed by the Chabots, and a junior judicial lien.

The Chabots filed a Chapter 7 petition on August 7, 1987. On that date, the property was worth $400,000.00, and was encumbered by a first deed of trust recorded in 1977 in the amount of $86,412.42, a second deed of trust recorded August 24, 1984, in the amount of $38,540.98, a third deed of trust recorded October 16, 1984, in the amount of $173,000.00, the Chabots' homestead exemption recorded November 29, 1984 in the amount of $45,000.00, and a judicial lien recorded by City National Bank ("CNB") in April, 1986 in the amount of $241,579.08. (The amount owing when the abstract of judgement, the judicial lien, was recorded was $212,115.87). The first and second deeds of trust and the homestead exemption are not in dispute.

The Chabots received a discharge and their case was closed January 7, 1988. On September 22, 1988, CNB filed a complaint in State Court to set aside the third deed of trust as a fraudulent conveyance. This third deed of trust, while purported to have been executed on July 19, 1984, was not recorded until October 16, 1984, shortly after CNB filed its original action on September 24, 1984. The deed of trust was purported to secure payment of a $173,-000.00 promissory note alleged to have been executed one year previously, on October 14, 1983. The note in turn was alleged to evidence loans made to the Chabots by their cousin between the years 1979 and 1983. The Chabots admit that there is no evidence of these loans.

On November 4, 1988, the Chabots filed a motion to reopen their bankruptcy case and filed a motion pursuant to Section 522(f)(1) to avoid CNB's judicial lien on the grounds it impaired their homestead exemption.

On March 13th, the Bankruptcy Court conducted a trial on the matter and denied Chabots' motion, finding that the judicial lien did not impair the homestead exemption.

During the pendency of this appeal, and on the eve of trial on the State Court action for fraudulent conveyance, the beneficiary of the third deed of trust executed a Subordination Agreement in settlement of that action, subordinating and waiving the lien of that deed of trust for all purposes as against the CNB judicial lien.

## ISSUE

Whether all or part of a judicial lien may be avoided pursuant to Section 522(f)(1) when the lien does not impair an exemption.

## Discussion

The Chabots have sought to avoid CNB's judicial lien pursuant to Section 522(f)(1). That section provides:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on a interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) A judicial lien; ..."

11 U.S.C. § 522(f)(1).

Section 522(f)(1) gives the Debtor only a limited power to avoid liens. The power is limited to certain situations and is also limited to certain amounts. Only a judicial lien may be avoided, and only "to the extent that such lien impairs an exemption."

In the case at bar there is no dispute that the judicial lien will have no impact on the Chabots' ability to recover their $45,000.00 homestead exemption. Under the applicable California law, *California Civil Code* § 2897, the judicial lien is junior and can never impair the homestead exemption. In the event of a sale of the property, the homestead exemption would always be satisfied prior to any junior interest, which in this case is the judicial lien. In fact, CNB has explicitly conceded the Chabots' claim to a $45,000.00 homestead exemption.

What is in dispute is whether Section 522(f)(1) may be used to avoid the amount of the judicial lien that was unsecured based upon the values existing on the date the petition was filed. If the Chabots are successful in avoiding the portion of the judicial lien which was unsecured, then the Chabots will be able to retain any subsequent appreciation on the value of the property. If the judicial lien is not avoided, then the increase in value of the property will belong to CNB until its claim is satisfied in full.

The homestead exemption is a lien in the amount of $45,000.00. There is no basis in law or equity for the contention that a homestead exemption provides all the benefits of ownership beyond the $45,000.00 lien, including the right to any increase in the value caused by subsequent events. In *West v. West (In Re West)* 68 B.R. 647 (Bkrtcy.C.D.Cal.1986), the Court avoided a judicial lien only "to the extent that such lien impairs an exemption," thus "giving Section 522(f)(1) its plain meaning." *Id.*, at 648.

A leading bankruptcy commentator also interprets Section 522(f)(1) by the same straightforward reading of the section's plain language and reaches the same conclusion:

"When the debtor avoids the fixing of a lien pursuant to Section 522(f), however, the lien is avoided only to the extent of the exemption, and the value of the lien that exceeds the amount that is exempted may still be enforced by the creditor."

3 Collier on Bankruptcy. Section 522.29[1], at 522–86 (15th Ed.1988) (*citing Alu v. State of New York, Dept. of Taxation and Fin.*, 41 B.R. 955 (E.D.N.Y.1984)).

This position is further supported by the holding of the lower court herein, as well as in the decision in *In Re Murray*, 105 B.R. 576 (Bkrtcy.C.D.Cal.1989). As noted in those decisions, the validity of this position is especially apparent where there has been a voluntary conveyance of the property under fraudulent circumstances. In *In Re Murray, supra,* the court noted that the debtor could easily avoid any judicial lien by merely placing a consensual lien on the property, thereby eliminating any remaining equity and causing avoidance of any judicial lien by the use of Section 522(f). The *In Re Murray* Court, in citing *Matter of Fiore*, 27 B.R. 48, 50 (Bkrtcy. D.Conn.1983), stated that such an interpretation is "an unjust result and should not be imparted to Congress' purpose and objective in enacting Section 522(f)." *Id.*, at 582.

The Court in *In Re Murray* concluded that "a judicial lien should only be avoided to the extent that it impairs an exemption allowed under Section 522(f) without regard to junior consensual liens. If the Debtor and a consensual lienholder wish to place a lien junior to judgement liens, they do so at their own risk. The Debtor, by consensual act, has chosen to impair its homestead exemption." *Id.*, at 582. The *In Re Murray* Court further stated:

"I hold that the placement of a consensual lien after a recorded judicial lien has no bearing on whether the judicial lien impairs an exemption. State law rules of priority of recording must be honored or individuals would be encouraged, even on the eve of bankruptcy, to place a consensual lien on the property in a sum that will produce no equity after taking into account the homestead exemption. To

hold otherwise would thus allow debtors and third parties to 'wipe out,' pursuant to 11 U.S.C. § 522(f), prior recorded judicial liens when they anticipated payment on the future sale or refinance of debtor's property." *Id.*, at 582–583.

In the case at bar, the third deed of trust was conveyed by the Chabots to their cousin immediately following commencement of CNB's State Court action against them. To allow this consensual junior lien to result in avoidance of CNB's judicial lien, not only flies in the face of the reasoning of *In Re Murray, supra*, but would result in a gross injustice and perversion of the Bankruptcy Code.

The Chabots contend that the judicial lien must be avoided in full in order to allow them a "fresh start." However, under the provisions of the Bankruptcy Code, debtors are only entitled to a fresh start by retaining the property they are permitted to exempt. As noted by the lower court herein, "if debtors were allowed to discharge the claims of legitimate creditors and were also allowed to keep their pre-petition property free of the liens of those creditors, then the debtors would be getting more than a fresh start. The Debtors would be getting a 'head start' under those circumstances." *Chabot*, 100 B.R. at 22. *Citing, Polk County Fed. Sav. & Loan Assn. of Des. Moines v. Whethers (In Re Whethers)*, 15 B.R. 945, 951 (Bkrtcy.D.Kan.1981). The *Code* does not envision that the Chabots receive an inequitable "head start." *Chabot*, 100 B.R. at 22.

The Debtors may not use Section 522(f)(1) to avoid CNB's judicial lien where the lien does not impair an exemption to which the Debtors are entitled. Accordingly, the decision of the Bankruptcy Court, denying avoidance of the judicial lien, is affirmed.